# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **NOREL STERLING WARD,** ) | |
| ) | Civil Action No. 7:20cv00036 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **WARDEN JEFF KISER,** *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

Norel Sterling Ward, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that the defendants subjected him to excessive force and failed to provide him with adequate medical care while he was housed at Red Onion State Prison ("Red Onion"). The defendants filed motions for summary judgment arguing that Ward failed to exhaust available administrative remedies before filing this action. After reviewing the evidence, the court will deny the defendants' motions and refer the matter for an evidentiary hearing on the issue of exhaustion.

## I.

Ward alleges that on May 18, 2019, while having a "mild stroke," he was placed in a segregation cell after defendant Sgt. Fleming made a remark that Ward was faking the stroke. (ECF No. 1, at 3.) After four or five minutes in the cell, Sgt. Fleming and another officer took Ward to the medical department in a wheelchair. Ward claims that the nurses remarked that Ward was "faking" the stroke and that he was a "good actor." (*Id.*) Ward states that his stroke lasted 30 minutes. After the alleged stroke, Ward told Sgt. Fleming that he was "okay," but a Lieutenant called an ambulance to take Ward to the hospital. (*Id.*) While Sgt. Fleming and a

nurse transported Ward in a wheelchair to the ambulance, they "threaten[ed]" him by telling him that "something better be wrong with [him]" because it was "costing [them a] lot of money." (*Id.* at 5.)

According to Ward, after he arrived at the hospital, an emergency department physician confirmed that he had suffered a mild stroke. (Ward did not submit any medical records to confirm this diagnosis.) Sometime thereafter, defendant Sgt. Massingill arrived at the hospital. Sgt. Massingill transported Ward back to Red Onion. Ward alleges that Sgt. Massingill and another officer placed Ward in a van that had no seatbelts and Sgt. Massingill drove the van. Ward claims that Sgt. Massingill made "wide turns" while driving and told Ward to "hang on back there." (*Id.* at 7.) Ward states that when Sgt. Massingill stopped making wide turns, Ward "dozed off," but he "felt the van pick up speed" and then Sgt. Massingill "slammed on the brakes." (*Id.*) Ward alleges that he went "airborn[e]" and slammed the left side of his head and shoulder into a metal beam in the van. (*Id.*) Ward states that he suffered a fractured clavicle, a separated "AC joint," and whiplash. (*Id.*) He states that he was told to do "home exercise[s]" twice a day, but that "made [his] injury worse." (*Id.* at 8.) He alleges that it is hard for him to sleep and to put his shirt on. He also states that he "was told that [he] need[s] surgery." (*Id.*)

Ward claims that, after the van incident, medical staff waited two months to take x-rays of his left shoulder and another month to schedule an appointment with an "outside hospital doctor." (*Id.*) Ward claims that the "outside bone therapy staff recommend[ed] that [he] get surgery," but that defendants Nurses Bledsoe and Witt "refused to get [him] surgery to put [his] coll[a]r bone back in place." (*Id.*)

Ward complains that he is always in pain, that the air conditioning is on in his cell until 8:00 p.m. every day, and that medical staff did not respond to his complaints of pain or his requests to be handcuffed in front of his body. Ward states that he wrote to defendant Warden Kiser, but that the Warden did not respond to his request forms. Ward does not provide copies of the requests he allegedly sent to the Warden.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th

-3-

Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

The defendants argue that Ward failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court finds genuine disputes of material facts regarding the availability of administrative remedies and, therefore, will deny the defendants' motions for summary judgment.

### A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not

provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

**B.**

In support of the defendants' motions for summary judgment, Acting Grievance Coordinator T. Trapp and Institutional Ombudsman C. Meade provide affidavits; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Ward's grievance records related to the claims raised in this action. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Grievance Coordinator Trapp and Ombudsman Meade explain that the grievance process provides corrections staff

a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the claims raised in this action are subject to the well-stablished requirements of OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If a response is not given to the inmate within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance, and he must attach the receipt of the informal complaint to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake.

Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

Ward alleges that he suffered a mild stroke on May 18, 2019, and that he was taken to the hospital, examined by the medical authorities, and sent back to Red Onion the same day. Ward claims that during the van ride back to the prison, a defendant drove recklessly and caused him injuries. He also claims that he was not provided adequate or timely treatment for the injuries he sustained. Ward did not timely file a regular grievance that he followed through to appeal and, therefore, he has not exhausted administrative remedies. But there is a genuine

dispute over whether administrative remedies were available to Ward and, therefore, the court will deny the defendants' motions for summary judgment.

On July 8, 2019—more than 30 days after the incident—Ward wrote an informal complaint claiming that he had a bone sticking out of his left arm socket and that an x-ray was taken on the wrong part of his shoulder. (*See* ECF No. 37-1, at 29.) Defendant Nurse Witt responded that he had an x-ray of his left shoulder on May 19, 2019, he was seen by the nurse practitioner on May 21, 2019, and he was scheduled to see the doctor. Ward did not file a regular grievance related to the incident, as required to exhaust his administrative remedies under OP 866.1. (*See* OP 866.1 § VI.A.1, ECF No. 26-1.)

On July 16, 2019, Ward filed an informal complaint, stating that he was not taken seriously when he was having a stroke and that staff did not assist him or get him to the medical department for treatment. (*See* ECF No. 37-1, at 26.) On the same day, he filed another informal complaint stating that medical staff had accused Ward of faking his symptoms before he was taken to the hospital and that he was missing a CPAP machine. (*See* ECF No. 37-1, at 27.) VDOC Health Services responded to Ward's informal complaints. Again, Ward did not file a regular grievance as to either of these informal complaints.

On July 23, 2019, Ward wrote another informal complaint stating that he was not receiving proper medical care for his alleged injuries. (*See* ECF No. 37-1, at 28.) Nurse Witt responded to this informal complaint, stating that it was repetitive. Ward did not follow-up by filing a regular grievance.

On July 24, 2019—67 days after the incident—Ward filed his first regular grievance on

-8-

the issues in this action. (*See* ECF No. 26-1, at 22.) Ward complained that he was subjected to cruel and unusual punishment on May 18, 2019, when Sgt. Fleming "locked" him in segregation while he was having a mild stroke and when Sgt. Massingill placed him in a van without a seatbelt and then drove the van recklessly. (*Id.*) The grievance was rejected at intake because it was filed more than 30 days after the incident. (OP 866.1 § VI.A.1.)

Ward appealed the grievance department's intake decision to the Regional Ombudsman, who upheld the intake decision. Under OP 866.1 § VI.B.5, "[i]f an offender wishes a review of the intake decision on any grievance, they may send the Regular Grievance form within five calendar days of receipt to the appropriate Regional Ombudsman for a determination. There is no further review or appeal of intake decisions." (*See* ECF No. 26-1, at 16.)

Ward filed a second grievance on July 24, 2019, complaining that Sgt. Massingill drove recklessly causing him serious injury, and that Sgt. Fleming accused him of faking his stroke and placed him in segregation while the stroke was happening. (*See* ECF No. 26-1, at 25.) Ward also attached an informal complaint he alleged he submitted on July 8, 2019, but for which he claims he never received a receipt.[1] The grievance was rejected at intake as being untimely. Ward appealed this intake decision, but the Regional Ombudsman upheld the intake decision. The Regional Ombudsman's decision was final. (OP 866.1 § VI.B.5.)

On July 28, 2019—71 days after the incident—Ward filed a third grievance,

---

[1] The court notes that there is no indication on the informal complaint that it was ever received by the grievance department in July 2019. The informal complaint states that two correctional officers transported Ward in a van without seat belts, that officer drove recklessly, and that when the driver slammed the brakes, Ward suffered injuries to his shoulder and head. The informal complaint was allegedly submitted 51 days after the incidents.

complaining that the doctor was a "liar," that the nurse said that he was faking his symptoms, and that he was injured in the transport ride back to the prison on May 18, 2019. (*See* ECF No. 37-1, at 22.) This grievance was rejected at intake for being untimely and for the lack of an informal complaint. Ward appealed this intake decision to the Regional Ombudsman, who upheld the intake decision.

Ward filed a fourth grievance on July 29, 2019, complaining that the emergency department physician's report was not true, that the nurses had stated that he was faking his symptoms, and that Sgt. Massengill was driving recklessly on the way back from the hospital. (*See* ECF No. 37-1, at 24.) This grievance was rejected at intake for being untimely and for the lack of an informal complaint. Ward appealed this intake decision to the Regional Ombudsman, who upheld the intake decision.

Ward filed a fifth grievance on August 13, 2019—87 days after the incident—alleging that he was subjected to reckless driving during the van ride back to the prison on May 18, 2019. (*See* ECF No. 26-1, at 33.) This grievance was rejected at intake as being untimely and for the lack of an attached informal complaint. Ward did not appeal the intake decision.

On September 3, 2019, Ward wrote an informal complaint stating that on September 3, 2019, he saw the doctor who told him that he had a bump on his shoulder, but which Ward claims was actually a bone sticking out of his shoulder. (*See* ECF No. 37-1, at 30.) Defendant Nurse Witt responded on behalf of the medical department and stated that he did not have a doctor's appointment on September 3, 2019. Ward did not follow-up by filing a regular grievance.

On September 22, 2019, Ward filed a regular grievance complaining that he was injured by a prison guard driving recklessly and that the doctor misdiagnosed his injury and failed to order surgery. (*See* ECF No. 1-1, at 17.) The grievance was rejected at intake because Ward failed to attach an informal complaint, as required by OP 866.1 § VI.A.2.a. Ward did not appeal the intake decision.

Despite his numerous filings, it is clear from the record that Ward did not fully exhaust administrative remedies as to his claims. Ward did not submit a regular grievance that was timely filed and included an informal complaint, as required by the VDOC's well-established grievance process. Therefore, the court considers whether administrative remedies were "available" to Ward.

According to Acting Grievance Coordinator Trapp, informal complaint or regular grievance forms generally should be accessible to all inmates. (*See* Aff. of T. Trapp ¶ 13, Sept. 11, 2020 [ECF No. 26-1].) Regardless of their housing assignment, an inmate should be able to obtain grievance forms by requesting a form from a staff member. (*Id.*) If an inmate cannot access a form, the inmate can submit an offender request form to the grievance department asking to receive the desired forms. (*Id.*) If an inmate still cannot access the forms after submitting the offender request, he may file a grievance about his lack of access to the forms. (*See* OP 866.1 § IV.M [ECF No. 26-1].)

In response to the defendants' motions, Ward alleges that he asked lieutenants, sergeants, and counselors for informal complaint forms, but he was denied the forms. Attached to one of his responses, Ward submits a letter that he sent to the Ombudsman on

August 4, 2019. (*See* ECF No. 39-1, at 1-2.) In the letter, Ward states that Lt. Adams and Sgt. Fleming refused to give him informal complaints on May 20, 2019. He also states that he was kept in segregation for over two months, and that when Lt. Adams or Sgt. Fleming would make rounds, he would ask them for informal complaints and they would say that they were getting him the form, but they would never come back with the form. He states that he asked them for the forms every three to four days. He also states that other sergeants failed to provide him with informal complaint forms upon request. In a second letter to the Ombudsman attached to his response, Ward states that while he was housed in segregation, all sergeants refused to give him informal complaint forms. (*See* ECF No. 39-1, at 3.) He also states that he "had to write [to the] grievance coordinator to get informal complaints." (*Id.*) Having reviewed the record, the court finds a genuine dispute of material fact as to whether administrative remedies were available to Ward or whether he was stymied in his efforts to file a grievance and, therefore, cannot grant defendants' motions for summary judgment.

## IV.

For the reasons stated, the court will deny the defendants' motions for summary judgment and refer this matter to United States Magistrate Judge Pamela Meade Sargent for an evidentiary hearing on the issue of exhaustion and, specifically, the availability of administrative remedies to Ward.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties and United States Magistrate Judge Pamela Meade Sargent.

**ENTERED** this 17th day of February, 2022.

                                                    */s/ Thomas T. Cullen*
                                                    HON. THOMAS T. CULLEN
                                                    UNITED STATES DISTRICT JUDGE